IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  10-cv-00125-WYD-CBS

HARTMUT WRIGHT,

    Plaintiff,

v.

REMINGTON ARMS COMPANY, INC.,

    Defendant.

# ORDER

THIS MATTER is before me on Defendant's Rule 12(B)(1) Motion to Dismiss and Memorandum in Support [ECF No. 20], filed April 15, 2010.  I have also considered Plaintiff's Response to Defendant's Motion to Dismiss [ECF No. 24], filed April 19, 2010 and Defendant's Reply in Support of its Rule 12(B)(1) Motion to Dismiss [ECF No. 26], filed April 21, 2010.

I. **BACKGROUND**

Plaintiff Hartmut Wright alleges that on November 16, 2008, while his hunting companion attempted to unload a Remington Model 700 rifle, the gun inadvertently fired.  Wright alleges that the gun fired without a trigger pull, while the safety was in the the "fire" position, as is required to unload the bolt-action rifle.  The bullet from the still-loaded gun went through a tree and continued on, hitting Mr. Wright in the back.  The bullet did not, however, penetrate Mr. Wright's hunting vest and it did not penetrate his

shirt. The bullet did cause a break in his skin as well as a large bruise on his back, near his shoulder. Mr. Wright did not immediately seek medical treatment for his injury, instead waiting nine days before seeing a doctor. Ten months later, he filed a product-liability suit against Remington in the Eastern District of Texas. On January 6, 2010, Judge John T. Ward of the Eastern District of Texas entered an order transferring the case to this District.

In his Complaint, Mr. Wright alleges that the Remington Model 700 contains a dangerously defective "Walker" fire control system that may fire without a trigger pull upon release of the safety, movement gun of the gun, or when the gun is jarred or bumped. Mr. Wright's complaint asserts claims of strict liability, negligence, and failure to warn against Remington, and seeks to recover damages arising from the incident. Wright further seeks exemplary or punitive damages against Remington.

II. **MOTION TO DISMISS**

In the pending motion, Defendant Remington Arms Company, Inc. asserts that the amount in controversy is less than the jurisdictional threshold of $75,000 and therefore that I should dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(1). After some initial discovery, including a deposition of Plaintiff Wright, Magistrate Judge Craig B. Shaffer stayed discovery pending the outcome of Remington's motion to dismiss.

    A. **Legal Standards**

A motion to dismiss pursuant to Rule 12(b)(1) can take one of two forms: a facial attack or a factual attack. *See Ruiz v. McDonnell,* 299 F.3d 1173, 1180 (10th Cir.

2002).  When reviewing a facial attack, the Court accepts the allegations of the Complaint as true.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  In a factual attack, a party may go beyond the allegations contained in the complaint and challenge the facts upon which jurisdiction is based.  *Id*.  When reviewing a factual attack on a complaint supported by affidavits or other documents, the Court makes its own factual findings and need not convert the motion to one for summary judgment.  *Id.* at 1003; *see also Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000).  ("[T]he trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.").  In reviewing a factual attack, I have wide discretion to allow affidavits and other documents to resolve disputed jurisdictional facts under Rule 12(b)(1).  *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221 (10th Cir. 2001).  When reviewing a factual attack on subject matter jurisdiction, I may not "presume the truthfulness of the complaint's factual allegations."  *Pringle*, 208 F.3d at 1222.

The party asserting jurisdiction has the burden of showing that the amount in controversy exceeds the jurisdictional amount.  *See Woodmen of World Life Ins. Soc. v. Manganaro*, 342 F.3d 1213, 1216 (10th Cir. 2003).  The plaintiff "can meet this burden by demonstrating that it is not legally certain that the claim is less than the jurisdictional amount."  *Id.*  Because the legal certainty standard is very strict, it is difficult for a case to be dismissed on the basis that the jurisdictional amount is not satisfied.  *Id.*  The jurisdictional amount, however, can "only be in controversy if asserted by [plaintiff] in good faith, as jurisdiction cannot be conferred or established by colorable or feigned allegations solely for such purpose."  *Emland Builders, Inc. v. Shea,* 359 F.2d 927, 929

(10th Cir. 1966).  In addition, once "allegations of jurisdictional facts are challenged, plaintiff must support them by competent proof, including amendments or affidavits, if necessary."  *Salazar v. Furr's, Inc.*, 629 F.Supp. 1403, 1407 (D. N.M. 1996)(citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936).  Once the evidence is submitted, I must decide the jurisdictional issue.  *See Emland Builders*, 359 F.2d at 929. ("If the amount becomes an issue, as in the case at bar, the trial court must make a determination of the facts.").

    **B.**    **Discussion**

Remington factually attacks Mr. Wright's basis for subject matter jurisdiction by arguing that the amount in controversy does not approach $75,000.  Remington asserts that Mr. Wright has only shown economic damages of under $400. (Def.'s Mot. to Dismiss 7).  Remington further asserts that Mr. Wright's "speculation about hypothesized non-economic or PTSD damages do not even rise to a colorable claim." (Def.'s Reply 3).

Mr. Wright's Complaint seeks to recover damages including "mental and physical pain and suffering, loss of earnings, and other general and special damages." (Compl. 3).  Wright further seeks exemplary or punitive damages.  In his response to Remington's factual attack, Mr. Wright incorrectly asserts that Remington must prove "to a legal certainty" that the plaintiff cannot recover the alleged amount.  (Pl.'s Resp. 1). Mr. Wright asserts that Remington has offered nothing to prove to a legal certainty that his non-economic damages, including punitive damages, will not be more than $75,000. (*Id.*).  And in a footnote, he indicates that "[u]pon evaluation by a qualified professional,

Mr. Wright may be diagnosed with Post Traumatic Stress Disorder or severe emotional stress or distress as a result of the incident." (Resp. 2, fn 7). As discussed above, however, Mr. Wright–as the party asserting jurisdiction–has the burden of proving it. It is Mr. Wright that must prove that it does not appear to a legal certainty that his claim is for less than the jurisdictional amount. *See Woodmen,* 342 F.3d at 1216 ("When federal subject matter jurisdiction is challenged based on the amount in controversy requirement, the plaintiffs must show that it does not appear to a legal certainty that they cannot recover the jurisdiction amount.")(internal quotation omitted). And, it is Mr. Wright that must support his allegation of jurisdiction with competent proof once it has been factually attacked by Remington. *Salazar,* 629 F.Supp. at 1407.

    I find that Wright, as the proponent of federal jurisdiction, has failed to meet his burden to show that jurisdiction is proper. Remington has submitted evidence that Mr. Wright's economic damages are less than $400. Remington submitted Mr. Wright's deposition transcript, wherein Wright testified that, among other things, he first saw a physician's assistant, Pete Smith, on November 25, 2008, nine days after the incident. (Def.'s Mot. to Dismiss, Ex. A, Wright Dep. 16:24–17:2). A copy of the office note from the physician's assistant confirms that visit. (Def.'s Mot. to Dismiss, Ex. G). Mr. Wright testified that he incurred $135.00 for the visit, and not more than $100 for an antibiotic prescription (for an unrelated sinus infection) and a muscle relaxer prescription. (Wright Dep. 15:12 –18:22). Mr. Wright further testified that he had no further medical treatment or consultations over the next sixteen months. (Wright Dep. 18:23 –19:3). He did not return to his doctor until April 1, 2010–after the scheduling conference in this case

during which Remington indicated it might file a Rule 12(b)(1) motion. Indeed, Mr. Wright testified that he scheduled the April 1, 2010 visit so that his doctor could document what he saw on the initial visit, sixteen months earlier, and not to seek further treatment for any ongoing medical issues. (Wright Dep. 19:4–19:15). On the recommendation of his primary physician, on April 5, 2010, Mr. Wright also saw an occupational medical specialist, Dr. Ogrodnick, to do an evaluation of his shoulder. (Wright Depo. 14:7–14:25). He incurred an additional expense of $125.25 to see Dr. Ogrodnick, who concluded that he had full range of motion in his shoulder. (Wright Depo. 20:19–21:2). As of the date of his deposition, Mr. Wright did not have any further doctor's appointments scheduled, or any plans to seek medical treatment of any type. (Wright Dep. 21:3–12). Accordingly, the evidence before me indicates that, as asserted by Remington, Mr. Wright has less than $400 in the form of medical expenses.

Wright's deposition further indicates that he has, at best, a very minimal claim for lost income. Wright testified that the accident happened on a Sunday, that he was back to work the following Monday, and that he has been working full-time since then. (Wright Dep. 11:23-12:16). Mr. Wright presented no additional evidence that he has not been able to work as a result of the accident.

Wright argues that he also suffered damages in the form of mental suffering as well as "trauma and disfigurement." (Pl.'s Resp. 2). Remington counters that such allegations of mental suffering are not made in good faith, but were rather only made in order to meet the jurisdictional amount. Remington is correct that the jurisdictional amount can only be in controversy if asserted in good faith. *Emland Builders,* 359 F.2d

at 929.  Jurisdiction cannot be conferred by colorable or feigned allegations.  *Id.*  Other courts have also indicated that substantial non-economic damage awards are not appropriate to compensate for short-term, minor ailments.  Rather, longer-lasting and more severe injuries are more likely to give rise to substantial non-economic damage awards.  *See Rosenboro v. Kim*, 994 F.2d 13, 18-19 (D.C.Cir.1993) (The "presence of medical evidence showing that a plaintiff is suffering from a continuing or permanent physical impairment [is] an important indicator" in determining whether the plaintiff meets the amount-in-controversy requirement.).

      Even looking at the evidence in the light most favorable to Mr. Wright, there is a lack of sufficient medical evidence that he has a continuing or permanent injury.  *See Rosenboro,* 994 F.2d at 18-19 (affirming dismissal where plaintiff failed to produce evidence indicating pain and suffering of any great magnitude or lasting duration arising from an automobile crash resulting in medical expenses of $2,130); *James v. Lusby*, 499 F.2d 488, 493 (D.C.Cir.1974) (per curiam) (affirming district court where plaintiff had no proof supporting claim of physical injuries).  While the evidence suggests that Mr. Wright has a one-inch scar on his shoulder as a result of the accident, Mr. Wright testified that since the bruise on his shoulder healed, he has not been limited in the activities he can perform as a result of the injury.  (Wright Depo. 74:10-17).  Furthermore, Dr. Ogrodnick's notes from Mr. Wright's April 5, 2010 appointment indicate that Mr. Wright only made the appointment because he was "interested to know whether he has an impairment for pending litigation." (Motion Ex. H).  Dr. Ogrodnick's notes further indicate that there is "very little tenderness" at Mr. Wright's injury site and that if

Mr. Wright were "rated now with the *AMA Guides to the Evalultion of Permanent Impairment, 3rd Edition, Revised*, or the more recent 6th Edition, he would <u>not have an impairment</u>." (*Id.*) (emphasis added).

Moreover, Mr. Wright did not submit any affidavits or exhibits to support his claim of mental suffering or trauma.  He did testify that he experienced "emotional trauma" as a result of the accident, including difficulty sleeping, bad dreams, and feeling "jumpy" when he hears loud noises.  (Wright Depo. 81:1-83:14).  But he also testified that his difficulty sleeping was only a temporary issue.  (Wright Depo. 83:5–7)(the loss of sleep occurred "at least during the first week" after the accident); (Wright Depo. 83:5–7) (he resumed normal sleeping "several weeks" after the accident).  And more importantly, he testified that he has never sought medical treatment or counseling for emotion trauma or depression and that he has never taken any medications as a result of emotional trauma.  (Wright Depo. 74:1–3; 94:3-95:17).

Because Remington has factually attacked Mr. Wright's basis for jurisdiction and offered argument and evidence that Mr. Wright's allegations have not been made in good faith, Mr. Wright cannot meet his jurisdictional burden without offering more factual information to support his claim of mental suffering or disfigurement.  While it is understandably troubling that Mr. Wright *could have* been very seriously harmed in this accident, either physically or mentally, the evidence presented suggests that he was not.  He has not provided any evidence that would prevent me from finding to a legal certainty that the amount in controversy does not exceed $75,000.

Wright further claims that exemplary or punitive damages are appropriate in this

case. Exemplary or punitive damages may be included in determining whether the jurisdictional amount in controversy has been met, so long as such damages are permitted to be awarded under the governing substantive law. *Woodmen*, 342 F.3d at 1218. As noted by Remington, however, the Colorado Exemplary Damage Statute imposes strict limits on punitive damages awards in this State based on the amount of actual damages. *Colo. Rev. Stat. Ann.* § 13-21-102(1)(a) ("The amount of such reasonable exemplary damages shall not exceed an amount which is equal to the amount of actual damages awarded to the injured party."). Because the economic losses suffered by Mr. Wright are minimal, and because his claim for pain and suffering appears to the be merely colorable, he cannot use his claim for punitive damages to cross the jurisdictional threshold. Liberal pleading rules are not a license for plaintiffs to shoehorn essentially state causes of action into federal court. Because it appears to a legal certainty that Wright could only recover an amount less than $75,000, Remington's motion to dismiss is granted.

III.  **CONCLUSION**

For the foregoing reasons it is

ORDERED that the Defendant's Rule 12(B)(1) Motion to Dismiss and Memorandum in Support [ECF No. 20], filed April 15, 2010, is **GRANTED**. It is

FURTHER ORDERED that the case is DISMISSED WITHOUT PREJUDICE.

Dated:  December 22, 2010

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge